ACCEPTED
01-15-00472-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/9/2015 9:36:18 PM
CHRISTOPHER PRINE
CLERK

# CASE NO. 01-15-00472-CR

*In The Court Of Appeals For The*

*First Supreme Judicial District*

*At Houston, Texas*

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/9/2015 9:36:18 PM
CHRISTOPHER A. PRINE
Clerk

## ALFREDO LARA,

**Appellant,**

## VS.

## THE STATE OF TEXAS,

**Appellee.**

**Cause No. 1414552**
**184th Judicial District Court**
**Harris County, Texas**

## LARA'S BRIEF

*Respectfully submitted by:*

**COLIN B. AMANN**
**KETTERMAN HEDLESTEN & AMANN**
*1004 PRAIRIE, SUITE 300*
*HOUSTON, TX 77002*
*713.652.2003 (Voice)*
*713.652.2002 (Facsimile)*
**colin@khalawyers.com**

**LARA WAIVES ORAL ARGUMENT**

## I. IDENTITY OF PARTIES AND COUNSEL

### A. Parties

Alfredo Lara, Defendant/Appellant

The State of Texas, Plaintiff
Represented by:
The Harris County District Attorney's Office
1201 Franklin
Houston, TX 77002

### B. Appellate Counsel

Colin B. Amann
Texas Bar 01138100
1004 Prairie, Suite 300
Houston, TX 77002
713-652-2003 (voice)
713-652-2002 (facsimile)

### C. Trial Counsel

Farnaz Faiaz
Texas Bar 24063791
Harris County District Attorney's Office
713-755-5800
Trial Counsel for the State of Texas

Kenneth Junck
Texas Bar 11051000
13410 Hollypark Drive
Houston, TX 77015
713-453-7283
Trial Counsel for Lara

**II.    TABLE OF CONTENTS**

Identity of Parties and Counsel.................................................................i

Table of Contents................................................................................ii

Index of Authorities...........................................................................iii

Statement of the Case...........................................................................1

Statement Regarding Oral Argument.............................................................2

Issues  Presented..................................................................................2

> 1.      Lara filed and presented a motion for new trial alleging that his counsel was ineffective for failing to investigate and present mitigating evidence at Lara's sentencing. The district court scheduled Lara's motion for a hearing. But because of a clerical error, it was set after the 75-day deadline had passed. So Lara's motion was overruled as a matter of law. Should this appeal be abated so that the trial court can conduct the hearing?

> 2.      Is Lara entitled to a hearing on his motion for new trial, which alleges ineffective assistance of counsel based on a failure to investigate and present mitigating evidence at Lara's sentencing?

Summary of the Argument.......................................................................2

Statement of Facts................................................................................3

Arguments..........................................................................................9

Prayer..............................................................................................19

Certificate of Service...........................................................................21

Certificate of Compliance......................................................................22

## III. INDEX OF AUTHORITIES

**Cases:**

*Cuyler v. Sullivan*, 446 U.S. 335 (1980).....................................................10

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973)..................................................11

*Hemphill v. State*, 2015 WL 1456338 (Tex. App. – Houston [14th Dist.]
March 26, 2015)(not designated for publication)....................................20

*Jordan v. State*, 883 S.W.2d 664 (Tex. Crim. App. 1994)..........................16, 17, 18

*Lopez v. State*, 462 S.W.3d 180
(Tex. App. – Houston [1st Dist.] 2015.....................................................13, 14, 15

*McFarland v. State*, 928 S.W.2d 482 (Tex. Crim. App. 1996)................................10

*McIntire v. State*, 698 S.W.2d 652 (Tex. Crim. App. 1985)....................................16

*Milburn v. State*, 15 S.W.3d 267
(Tex. App. – Houston [14th Dist.] 2000)....................................................13, 15, 17, 19

*Nix v. Whiteside*, 475 U.S. 157 (1986).......................................................12

*Powell v. Alabama*, 287 U.S. 45 (1932)..................................................9, 12

*Reyes v. State*, 849 S.W.2d 812 (Tex. Crim. App. 1993)..................................16, 17

*Rivera v. State*, 123 S.W.3d 21
(Tex. App. – Houston [1st Dist.] 2003, pet. ref'd)....................................13

*Strickland v. Washington*, 446 U.S. 668 (1984)..................................10, 11, 12, 14

*Thomas v. State,* 550 S.W.2d 64 (Tex. Crim. App. 1977)......................................10

*United States v. Cronic*, 466 U.S. 648 (1984).......................................................11

*Vela v. Estelle*, 708 F.2d 954 (5th Cir.1983), *cert. denied*, 464 U.S. 1053 (1984)....13

*Williams v. Taylor*, 529 U.S. 362 (2000).................................................................13

**Constitutions:**

U.S. CONST. amend. VI......................................................................................9

**Statutes:**

TEX. PENAL CODE ANN. §22.04(a)(1)(Vernon's 2014)................................................1

**Rules:**

TEX. R. APP. P. 21.4(a)..............................................................................1, 4

TEX. R. APP. P. 4.1(a).................................................................................1, 4

TEX. R. APP. P. 21.8(c)....................................................................................1

TEX. R. APP. P. 21.8(a)....................................................................................5

TEX. R. APP. P. 21.6........................................................................................5

## IV. STATEMENT OF THE CASE

The appellant, Alfredo Lara, was charged by indictment with causing serious bodily injury to a child.[1] On September 16, 2014, Lara pleaded guilty and the case was reset so that a presentence investigation report could be prepared.[2]

On October 29, 2014, after conducting a hearing, Lara was found guilty and the trial court assessed punishment at forty years' confinement in the State penitentiary.[3] On December 1, 2014, Lara filed a motion for new trial.[4] This motion was timely presented to the trial court by December 11, 2015.[5]

Lara's motion for new trial was set for a hearing, but the hearing date – January 20, 2015 – was inadvertently scheduled in excess of 75 days from the motion's filing.[6] Lara's motion was therefore overruled, as a matter of law, on January 12, 2015.[7]

Lara timely filed his notice of appeal on January 26, 2015.[8]

---

[1]/ C.R. I at 13. *See* TEX. PENAL CODE §22.04(a)(1).

[2]/ C.R. I at 19, 32.

[3]/ C.R. I at 34.

[4]/ C.R. I at 37. *See* TEX. R. APP. P. 21.4(a) & 4.1(a).

[5]/ C.R. I at 45, 51. *See* TEX. R. APP. P. 21.6.

[6]/ C.R. I at 45, 49.

[7]/ *See* TEX. R. APP. P. 21.8(c)

[8]/ C.R. I at 53.

## V.    STATEMENT REGARDING ORAL ARGUMENT

Lara waives oral argument, but will gladly appear before this Honorable Court if requested to do so.

## VI.    ISSUES PRESENTED

1.    Lara filed and presented a motion for new trial alleging that his counsel was ineffective for failing to investigate and present mitigating evidence at Lara's sentencing. The district court scheduled Lara's motion for a hearing. But because of a clerical error, it was set after the 75-day deadline had passed. So Lara's motion was overruled as a matter of law. Should this appeal be abated so that the trial court can conduct the hearing?

2.    Is Lara entitled to a hearing on his motion for new trial, which alleges ineffective assistance of counsel based on a failure to investigate and present mitigating evidence at Lara's sentencing?

## VII.    SUMMARY OF THE ARGUMENT

It is well settled that trial counsel has a professional duty to investigate his client's background, and to present mitigating evidence at a sentencing hearing. If he fails to do so, and the defendant is prejudiced by this failure, then counsel is ineffective and the defendant is entitled to a new punishment hearing.

Here, Lara filed and presented a motion for new trial alleging ineffective assistance of counsel. This motion, and its accompanying affidavit, provided reasonable grounds to believe that his counsel did not properly investigate his background, and failed to produce crucial mitigating evidence at the punishment hearing. The district court in fact set this matter for a hearing, but due to a clerical error, the hearing was scheduled for a date that was eight days past the 75-day deadline for the court to rule. Lara's new trial motion was therefore overruled as a matter of law.

Lara's motion for new trial makes clear that he was entitled to a hearing. So this Court should either: 1) abate the appeal and remand this case to the trial court so that it can conduct the hearing that it intended to hold; or 2) set aside Lara's punishment and remand this case to the trial court for a new punishment hearing.

## VIII.  STATEMENT OF FACTS

### A.    Procedural Background

On October 29, 2014, after conducting a sentencing hearing in conjunction with a presentence investigation report, Lara was found guilty of causing seriously bodily injury to a child. The court assessed his punishment at forty years' confinement in the State penitentiary.[9]

---

[9]/  C.R. I at 34.

On December 1, 2014, Lara filed a motion for new trial alleging ineffective assistance of counsel.[10] This motion was supported by Lara's affidavit, which highlighted – among other things – defense counsel's lack of investigation and deficient performance at the punishment hearing:

- My lawyer never reviewed any of my child's medical records with me;

- I was not advised that I could hire a medical expert to review those medical records so that my child's prognosis could be established;

- Even though there was an extensive CPS investigation, my lawyer never reviewed any of the CPS records with me, and as far as I know, he never obtained the CPS records so that he could review them;

- During the PSI hearing, my lawyer never informed the Court that I had attended, and successfully completed: (1) a sixteen-week anger management class; and (2) a ten-week parenting course. I also underwent an extensive psychological evaluation, the results of which were never presented to the Court. None of my numerous drug and alcohol tests, all of which were negative, were offered into evidence.[11]

Lara's motion requested a hearing, and accurately stated that the hearing should be held no later than January 12, 2015, which was 75 days from the date that sentence

---

[10]/ C.R. I at 37. *See* Tex. R. App. P. 21.4(a) & 4.1(a).

[11]/ C.R. I at 42.

was imposed in open court.[12] And, finally, the motion for new trial was timely presented to the district court by December 11, 2015.[13]

So all of the necessary steps were taken to ensure that Lara received a hearing on his motion. But the hearing date was scheduled for January 20, 2015, which was eight days past the 75-day deadline.[14] What apparently happened is that the numbers of the January 12 date (recited in the motion) were transposed and read as January 21, instead. The hearing was hence set for January 20, which would have been within the mistaken deadline of January 21.[15]

It is nevertheless apparent that the court intended to hear Lara's motion for new trial, as evidenced by it being set on the court's docket. The motion was, unfortunately, overruled as a matter of law because of what amounts to a clerical error that went unnoticed.

### B.    The Punishment Hearing

At the punishment hearing, the State presented the child's mother, Amanda Hurt, as its only witness.

---

[12]/ C.R. I at 39. *See* TEX. R. APP. P. 21.8(a).

[13]/ C.R. I at 45, 51. *See* TEX. R. APP. P. 21.6.

[14]/ C.R. I at 45.

[15]/ C.R. I at 49.

Ms. Hurt testified that the injured child, who is Lara's son, was six-months old when the incident occurred.[16] Lara at first maintained that the child had suffered his injuries as a result of rolling off of the bed.[17] But Ms. Hurt later learned that Lara had admitted to throwing the child into a car seat four or five times.[18]

The child was in hospital for more than three weeks recovering from his injuries.[19] Children's Protective Services (CPS) took custody of the child after he was released from the hospital. He was returned to his mother six weeks later.[20]

The child, who was almost three-years old at the time of the sentencing hearing, has to be taken to the doctor every six months because he has a shunt in his head. He also speech and physical therapy once a week.[21] Three strokes that he had while in hospital caused paralysis to part of his left side, and efforts were being made to help him walk better. He is four or five months behind with his learning.[22]

Notwithstanding the extent of her son's injuries, Ms. Hurt asked the court to

---

[16]/ R.R. II at 11.

[17]/ R.R. II at 23.

[18]/ R.R. II at 24.

[19]/ R.R. II at 23.

[20]/ R.R. II at 23-24.

[21]/ R.R. II at 24-26.

[22]/ R.R. II at 34.

place Lara on probation. She did not want him to go to prison. Lara pays child support, which allows her to have her son in daycare while she goes to work.[23] She asked the court to place Lara on deferred adjudication, and prohibit him from ever seeing his son again.[24]

Lara testified that he grew frustrated when he could not stop his son's crying. He eventually threw him in a car seat, which was sitting on the living room floor, four or five times.[25] He immediately realized that his son was hurt and rushed him to the hospital.[26] But he never told the doctors what really happened to his son.[27] Eight months after the incident, he finally admitted what he had done.[28]

A week or so before this incident – while in Lara's care – the child fell out of the bed and injured his head.[29] Lara did not tell anyone about that incident, either.[30]

---

[23]/ R.R. II at 28.

[24]/ R.R. II at 29-30, 47-49.

[25]/ R.R. II at 39-40, 46.

[26]/ R.R. II at 40, 50.

[27]/ R.R. II at 52.

[28]/ R.R. II at 53.

[29]/ R.R. II at 54.

[30]/ R.R. II at 54.

And Lara never told CPS what he had done to his son.[31]

Lara understands that he will have to pay child support and provide insurance for his son.[32] Lara feels terrible about what he did to his child, and stated that he would never do anything like that again.[33]

Lara has never been convicted of a felony.[34] But in July 2011, he was placed on a one-year probation for assaulting his daughter.[35] She was 17- or 18-years old at the time, and had come home drunk one night shortly after Lara's wife had passed away.[36] The two started arguing and he slapped her.[37]

At the conclusion of the hearing, Lara's counsel merely suggested that based on what the mom wanted, and in the best interests of the child, Lara should continue to pay child support, provide insurance, and see to the child's financial needs.[38] He never specifically asked the court for probation.

---

[31]/ R.R. II at 55.

[32]/ R.R. II at 42.

[33]/ R.R. II at 43-44.

[34]/ R.R. II at 43.

[35]/ R.R. II at 59-60.

[36]/ R.R. II at 60-61.

[37]/ R.R. II at 61.

[38]/ R.R. II at 69.

The prosecutor recounted the mother's teary-eyed plea for deferred adjudication.[39] And then, after balancing her wishes, the child's best interests, and the facts of the case, recommended a five-year prison sentence.[40]

The court sentenced Lara to 40 years in prison.[41]

## IX.    ARGUMENTS

### A.    Ineffective Assistance of Counsel

Since Lara claims that his lawyer was ineffective, it will be useful to examine the basic principles concerning: 1) a lawyer's duties in providing effective assistance; and 2) the legal standard for proving ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."[42] Since the Supreme Court decision in *Powell v. Alabama*, this Constitutional mandate has been interpreted to guarantee an accused "effective assistance" of counsel.[43] Fundamental to the right of counsel is the recognition that the

---

[39]/ R.R. II at 71.

[40]/ R.R. II at 72.

[41]/ R.R. II at 73.

[42]/ U.S. CONST. amend. VI.

[43]/ *Powell v. Alabama*, 287 U.S. 45 (1932).

-9-

effective assistance of an attorney is essential to assure a fair trial.[44] "Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself."[45]

In *Strickland v. Washington*,[46] the United States Supreme Court established a two-part test for determining whether an attorney's assistance is so ineffective as to require the reversal of a conviction. It must first be shown that counsel's performance was deficient — counsel's performance must have fallen below an objective standard of reasonableness under prevailing professional norms.[47] If this requirement is satisfied, it must next be established that the deficient performance prejudiced the defendant.[48] *Prejudice* occurs when there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[49] A *reasonable probability* is a probability sufficient to undermine confidence in the

---

[44]/ *Thomas v. State*, 550 S.W.2d 64, 67 (Tex. Crim. App. 1977).

[45]/ *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980).

[46]/ *Strickland v. Washington*, 466 U.S. 668 (1984).

[47]/ *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

[48]/ *Strickland*, 466 U.S. at 687.

[49]/ *Strickland*, 466 U.S. at 687.

outcome.[50] It need not be shown, however, that counsel's substandard conduct more likely than not altered the outcome of the case.[51]

Under *Strickland*, an attorney has a professional duty to present all available evidence and arguments to support the defense of his client. As the Supreme Court noted in *Gagnon v. Scarpelli*,[52] the attorney who represents a criminal defendant is "bound by professional duty to present all available evidence and arguments in support of [the client's] positions and to contest with vigor all adverse evidence and views." The proper function of the adversarial testing process would be undermined and judicial proceedings could not be relied upon as having produced just results if this were otherwise. Absent competent counsel, ready and able to subject the prosecution's case to the "crucible of meaningful adversarial testing," there can be no guarantee that the adversarial system will function properly to produce just and reliable results.[53] *Strickland* makes clear that the right to effective assistance of counsel is explicitly tied to the defendant's right to a fundamentally fair trial — a trial in which the

---

[50]/ *Strickland*, 466 U.S. at 694.

[51]/ *Strickland*, 466 U.S. at 694.

[52]/ *Gagnon v. Scarpelli*, 411 U.S. 778, 787 (1973).

[53]/ *United States v. Cronic*, 466 U.S. 648, 656 (1984).

determination of guilt or innocence is "just" and "reliable."[54]

The right to effective assistance of counsel is therefore recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. The Sixth Amendment embodies this guarantee "because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results."[55] A criminal defendant who obtains relief under *Strickland* does not receive a windfall; on the contrary, reversal of a defendant's conviction is necessary to ensure a fair and just result. To hold differently would be, in the words of Justice Sutherland, "to ignore the fundamental postulate . . . that there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard."[56] These principles of effective assistance apply with equal force to guilt/innocence proceedings, and punishment determinations.

"The sentencing stage of any case, regardless of the potential punishment, is 'the time at which for many defendants the most important services of the entire proceeding

---

[54]/ *Strickland,* 466 U.S. at 685-86, 696. *See also Nix v. Whiteside*, 475 U.S. 157, 175 (1986)(under *Strickland,* the "bench mark" of the right to counsel is the "fairness of the adversary proceeding").

[55]/ *Strickland*, 466 U.S. at 685.

[56]/ *Powell*, 287 U.S. at 71.

can be performed.'"[57] For example, in a recent decision from this Court, *Lopez v. State*, the defendant pleaded guilty to aggravated robbery without a recommended sentence and, following a presentence investigation, was sentenced to 30 years in prison.[58] The defendant filed a motion for new trial claiming that counsel was ineffective because he failed to investigate the defendant's background and present mitigating evidence at the sentencing hearing.[59] The trial court denied the motion and the ensuing appeal focused on counsel's obligations at punishment hearings.

With respect to *Strickland's* first prong, this Court observed that the defendant's counsel had a "professional obligation to conduct a reasonable investigation into his client's background and to evaluate whether the information discovered would be helpful in mitigating against the State's evidence on punishment."[60] And of course counsel could not justify the failure to present mitigating circumstances as a tactical decision when he had not conducted this investigation into the defendant's background.[61]

---

[57] / *Milburn v. State*, 15 S.W.3d 267, 269 (Tex. App. – Houston [14th Dist.] 2000), quoting *Vela v. Estelle*, 708 F.2d 954, 964 (5th Cir. 1983), *cert. denied*, 464 U.S. 1053 (1984).

[58] / *Lopez v. State*, 462 S.W.3d 180, 182 (Tex. App. – Houston [1st Dist.] 2015).

[59] / *Lopez*, 462 S.W.3d at 182, 186.

[60] / *Lopez*, 462 S.W.3d at 187; citing *Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Rivera v. State*, 123 S.W.3d 21, 31 (Tex. App. – Houston [1st Dist.] 2003, pet. ref'd).

[61] / *Lopez*, 462 S.W.3d at 186.

Under *Strickland's* second prong, the Court focused on whether there was a "reasonable probability that the assessment of punishment would have been less severe in the absence of defense counsel's deficient performance."[62] In other words, was the result of the particular proceeding "'unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'"[63]

In evaluating if such a collapse had occurred, the Court observed that in the sentencing process, punishment questions are determined by weighing the relative merits of both mitigating and aggravating factors, and then making reasoned adjustments in the severity of the sentence.[64] The adversarial process is hindered if the factfinder is not provided with favorable evidence, and is left to consider only the aggravating factors.[65] The Court concluded that prejudice exists if defense counsel's failure to investigate results in no mitigating evidence being presented to offset the aggravating ingredients.[66] In such instances, "there is not even a *possibility* of the factfinder considering mitigating evidence."[67]

---

[62]/ *Lopez*, 462 S.W.3d at 188.

[63]/ *Lopez*, 462 S.W.3d at 188, quoting *Strickland*, 466 U.S. at 696.

[64]/ *Lopez*, 462 S.W.3d at 188.

[65]/ *Lopez*, 462 S.W.3d at 188.

[66]/ *Lopez*, 462 S.W.3d at 189.

[67]/ *Lopez*, 462 S.W.3d at 189. (Emphasis added).

Since defense counsel neither investigated nor presented any punishment evidence for the trial court to consider, Lopez was deprived "of even the possibility of developing a mitigating defense."[68] The Court thus held that the trial court erred in denying the motion for new trial, and the case was remanded for a new punishment hearing.[69]

In similar fashion, the Fourteenth Court of Appeals reversed and remanded a matter for a new punishment hearing where defense counsel presented no mitigation evidence on his client's behalf.[70] In *Milburn*, the Court concluded that "even though it is sheer speculation that character witnesses in mitigation would have in fact favorably influenced the [trial court's] assessment of punishment," a defendant is nonetheless prejudiced when counsel's lack of effort at a punishment hearing precludes the possibility of bringing out even a single mitigating factor.[71] This is especially true when the potential punishment is life imprisonment.[72]

It is apparent from this discussion that trial counsel bears the burden of

---

[68]/ *Lopez*, 462 S.W.3d at 189.

[69]/ *Lopez*, 462 S.W.3d at 190.

[70]/ *Milburn*, 15 S.W.3d at 271-72.

[71]/ *Milburn*, 15 S.W.3d at 271.

[72]/ *Milburn*, 15 S.W.3d at 269.

searching for the existence of any favorable evidence that might be presented in mitigation of his client's punishment. And a new-trial hearing is warranted if there is any credible reason to think that he failed in his task. This is indeed the only way to ensure that the defendant received a full, balanced, and fair punishment decision.

### B.    Lara was Entitled to a Hearing on his Motion for New Trial

When the grounds for granting a new trial are outside the record, a motion for new trial must be substantiated by someone with knowledge of the pertinent facts.[73] As a prerequisite to obtaining a hearing – and as a matter of pleading – the motion must be supported by an affidavit of either the accused, or someone else, specifically showing the truth of the grounds asserted.[74] This does not mean that the affidavit must "reflect every component legally required to establish relief . . . ."[75] The motion and the accompanying affidavit must merely indicate "that reasonable grounds exist for holding that such relief could be granted."[76] In other words, a defendant does not have to establish a *prima facie* case for the grounds raised in his motion for new trial.[77] It

---

[73]/ *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993).

[74]/ *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994).

[75]/ *Jordan*, 883 S.W.2d at 665.

[76]/ *Jordan*, 883 S.W.2d at 665.

[77]/ *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985).

is enough that he assert reasonable grounds for relief that are not determinable from the record. And if his motion and affidavit do that, an evidentiary hearing on the motion is mandatory.[78] The purpose of the hearing is, of course, to then fully develop the issues raised in the motion for new trial.[79]

In the instant case, Lara's potential punishment was life in prison. The sentencing hearing was therefore vitally important.[80] Lara's motion for new trial claiming ineffective assistance of counsel was supported by his affidavit, which detailed defense counsel's lack of investigation and deficient performance at this most critical punishment hearing:

- My lawyer never reviewed any of my child's medical records with me;

- I was not advised that I could hire a medical expert to review those medical records so that my child's prognosis could be established;

- Even though there was an extensive CPS investigation, my lawyer never reviewed any of the CPS records with me, and as far as I know, he never obtained the CPS records so that he could review them;

- During the PSI hearing, my lawyer never informed the Court that I had attended, and successfully completed: (1) a sixteen-week

---

[78]/ *Reyes*, 849 S.W.2d at 816.

[79]/ *Jordan*, 883 S.W.2d at 665.

[80]/ *Milburn*, 15 S.W.3d at 269.

anger management class; and (2) a ten-week parenting course. I also underwent an extensive psychological evaluation, the results of which were never presented to the Court. None of my numerous drug and alcohol tests, all of which were negative, were offered into evidence.[81]

These allegations demonstrate that reasonable grounds exist for holding that Lara would be entitled to relief on his ineffective-assistance claim.[82] Much like the situations in *Lopez* and *Milburn*, Lara's counsel failed to investigate and present mitigation evidence at the sentencing hearing.

It is a fair assumption that counsel did not examine anything from the CPS case. Either that case was closed without Lara's parental rights being terminated, which would certainly be favorable evidence, or his rights were terminated; a fact that probably would not have escaped the prosecutor's attention — especially since CPS took custody of the child after he was released from the hospital, and did not return him to his mother until six weeks later.[83]

And it would have been quite important for the sentencing court to hear that Lara 1) completed a sixteen-week anger management class, 2) finished a ten-week parenting course, 3) underwent an extensive psychological evaluation, and 4) passed

---

[81]/ C.R. I at 42.

[82]/ *See Jordan*, 883 S.W.2d at 665.

[83]/ R.R. II at 23-24.

-18-

numerous drug and alcohol tests. This evidence shows that Lara had a significant head-start on the rehabilitative process, which made him a better candidate for probation because he posed less of a future threat to others. At the very least, such efforts might have warranted the consideration of something less than a 40-year prison sentence.

The destructiveness caused by the absence of this mitigating proof is perhaps best evidenced by the court's 40-year sentence, which far exceeded the five years recommended by the State.[84] There exists a very real probability that Lara's sentence would have been less severe had the court been provided with mitigating circumstances to offset the aggravating factors.[85]

So Lara's motion for new trial and accompanying affidavit entitled him to a hearing. That much seems certain. Even the trial court set this matter for a hearing.[86] And but for an unfortunate error in the scheduling, that hearing would have taken place.

## X.    PRAYER

Lara requests that his appeal be abated and that this case be remanded to the trial court to conduct a hearing on Lara's motion for new trial regarding his contention that

---

[84]/ *See Milburn*, 15 S.W.3d at 270.

[85]/ *See Milburn*, 15 S.W.3d at 271.

[86]/ C.R. I at 45.

he was denied effective assistance of counsel at the sentencing hearing.[87]

Alternatively, Lara requests that his punishment be set aside and that this case be remanded for a new trial on punishment.

Respectfully submitted,

KETTERMAN HEDLESTEN & AMANN, PLLC

By: /s/ *Colin B. Amann*
    COLIN B. AMANN
    State Bar No. 01138100
    1004 Prairie, Suite 300
    Houston, Texas 77002
    (713) 652-2003
    (713) 652-2002 (Facsimile)
    colin@khalawyers.com

---

[87]/ *See Hemphill v. State*, 2015 WL 1456338 (Tex. App. – Houston [14th Dist.] March 26, 2015)(not designated for publication).

## CERTIFICATE OF SERVICE

A copy of Lara's Brief was delivered to the following party(ies) by the means

indicated on 9 September 2015:


*E-Mail Delivery:*
curry_alan@dao.hctx.net

Appellate Division
Harris County District Attorney
Houston, Texas


 /s/ *Colin B. Amann*
COLIN B. AMANN